IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00360-WYD-MJW

RICHARD THOMPSON,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
DOCTOR BLOOR, L.C.F. Medical Staff, and
DOCTOR WALKER, L.C.F. Medical Staff,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 20)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by District Judge Wiley Y. Daniel on April 10, 2007. (Docket No. 10).

Before the court for Report and Recommendation is the Defendants' Motion to Dismiss (Docket No. 20) and Memorandum Brief in Support (Docket No. 21). The pro se incarcerated plaintiff did not file a response to the motion. The court has considered the motion and supporting brief, applicable Federal Rules of Civil Procedure and case law, and the court's file. The court now being fully informed makes the following findings, conclusions, and recommendation.

The allegations in the pro se Prisoner Complaint (Docket No. 3) include the following. Plaintiff has a "deformed spine," which he has been told is "skulliosis [sic] or

Shermans disease." (Docket No. 3 at 3). His curvature of the spine is totally visible, and he is in excruciating pain. "The last four years have been total hell due to negligence and down write [sic] stupidy [sic] by the Doctor [sic] that [sic] are torturing me." (Docket No. 3 at 3). He has been going to Department of Corrections ("DOC") doctors for his spinal condition for ten years, and his chart shows how his condition has worsened and how painful it is for him.

Plaintiff was sent to Denver General Hospital to be seen by the neurosurgeon, who said the pain was from the curvature of the spine and that plaintiff "had globalization and bulging" in his lower spine. She did not want to do surgery at that time, but she suggested that he be on pain killers and muscle relaxers. Nevertheless, the DOC doctors said they "only had to take [the surgeon's opinion] as a suggestion, so they refuse to give [plaintiff] anything for the pain." (Docket No. 3 at 3). Plaintiff "went through every alternative they had, a tenser [sic] unit, I have been on every muscle relaxer they describe hear [sic], the only one that does not mess [his] stomach up so muctch [sic] to where its worth taking is backliphen, at times it makes the sharp pain a more dull pain it is so minimal [plaintiff] wouldnt [sic] call it relief its [sic] better than absolutely nothing." (Docket No. 3 at 3). Defendant Walker has reduced the dosage by half.

The surgeon said she wanted plaintiff to get another MRI and return in four months for monitoring of the curvature. About four months later, plaintiff was taken back to Denver General Hospital, and the surgeon said she could not see plaintiff because the MRI was never done, so this trip was a "dry run." Plaintiff asked defendant

Walker why plaintiff was taken on a "dry run," and she would not answer, she and plaintiff got into an argument, and she just walked out of the examination room. Walker "is so incompetant [sic] about things that pertain to the back . . . ." (Docket No. 3 at 3). Walker "says that the way [plaintiff] walk[s] she doesnt [sic] think [plaintiff is] in pain, although [plaintiff] has barely seen her when [he] was not in shackels [sic]. . . ." Plaintiff tells Walker he cannot sleep, and her response is that he cannot sleep at night because he sleeps all day, which plaintiff says is not true. When Walker examines plaintiff, it hurts the way she makes him bend from the waist. As a result, plaintiff cannot get out of bed for days, "although spending days on end in [his] bed because of [his] back pain when [he hasn't] seen the doctor is routene [sic] for [plaintiff]." (Docket No. 3 at 4). Walker has seen him when he cannot walk because of pain and when his back spasms so much that plaintiff has had to have his spine injected, yet she refuses to get him a medically unassigned job in the prison. He has not been assigned to a job for any amount of time in the last two years. (Docket No. 3 at 12).

As shown by his account statement attached to his *in forma pauperis* application, he has been erroneously charged for every visit even though he should be charged just once every six months. He is "constantly going over to medical" for his back. Walker storms out of the examination room and then charges him for "these meaningless visits." According to plaintiff, Walker "has totaly [sic] failed to follow accepted medical practices in diagnosing and treating" plaintiff. (Docket No. 3 at 4). She

> diagnosis [sic] my condition by making assumptions that are false doing examinations that are not and can not be accurate due to my movements being restricted by restraints, refuses to take the advice of a more quilified

> [sic] nerosurgin [sic] on how I should be managing my pain refuses to aknoledge [sic] a curviture [sic] to see how its [sic] progressing storms out of our appointments then over charges me and in her head thinks I have been faking my back pain when its [sic] documented for at least the last ten years. . . . I deserve to be compansated [sic] for such absolute negligence and all the days I have sufferd [sic] so far, and I need to get some one outside of the Department of Corrections to diagnose me properly so the agony can stop.

(Docket No. 3 at 6). Walker has watched another doctor do trigger point injections and can see the deformity. "Some one needs to pay for this total and absolute negligence . . ." (Docket No. 3 at 4).

The DOC psychologist has prescribed plaintiff a medication for depression. (Docket No. 3 at 6). Under a claim entitled "Pain and Suffuring [sic]," plaintiff states:

> . . . For the last 4 years it has been totally hell for me I used to be able to get around and work out now I do what back stretching excersizes [sic] I can a verry [sic] minor work out once or twice a week. . . . I went to the physical therapist for D.O.C. He gave me a packet of the same back stretching excersizes [sic] I have been given 4 times and already do. It was totally pointless, I got a tensor [sic] unit, used it for a few months, it did not work for me. I have tried every muscle relaxer they offer they don't [sic] work and or make me vomit and upset my stomach to mutch [sic], I have been perscribed [sic] the following muscle relaxers = parafon, pamalac, motrin, ibuprofin I will have to refer to my file for the other 3 or 4 that are contained in. I am suffering and in pain I have approached every remedy that has been offerd [sic] . . .

(Docket No. 3 at 9-10).

On an unspecified date, plaintiff's back went out, and he had many people tell the officers he needed medical attention and could not walk to the "chow hall" and instead needed a tray brought back to the "cell house." Plaintiff barely ate for three days when he could limp down to the phone and call his sister. "They called up hear [sic] and demanded [plaintiff] be seen by a doctor [he] went to medical and they

confirmed [sic] back being in spasms and injecting it . . . ." (Docket No. 3 at 4).

Defendant Dr. Bloor was "totally neglagent [sic]" by going to the "cell house" and asking the officers about plaintiff's movements. (Docket No. 3 at 4). "Dr. Bloor came over to the cell house and inquire's [sic] what the officers think of my condition, not only is it none of thier [sic] buisness [sic], they have no medical training I am in to [sic] mutch [sic] pain to be neglected by a Doctor who inquire's [sic] the opinion of officers that refuse to pick up a phone and call the kitchen and order me a tray because I cant walk . . . ." (Docket No. 3 at 7).

The "nature of the case" against Limon Correction Facility is

> it is manditory [sic] that you have a job to have the privledge [sic] of not being locked down most the day in your house and be able to go to the yard or music room. I got a job in the kitchen. I threw out my back having to be on my feet for long periods of time washing dishes, I limped to work and told them my back was to [sic] messed up to walk and stand. They fired me and even wrote me up for failure to work, the hearing officer threw out the write up but the kitchen put me on unassigned status and took all of my privlidges [sic] because of my back condition. . . .

(Docket No. 3 at 4).

Plaintiff lists five claims for relief: (1) medical malpractice, (2) breach of doctor/patient confidentiality, (3) pain and suffering, (4) cruel and unusual punishment, and (5) mental anguish. He seeks $2 million in damages, plus pain killers, no reduction of his muscle relaxer, an increase of that muscle relaxer to an effective level, an examination by a doctor unaffiliated with DOC to determine the best pain management and rehabilitation, and an order directing DOC to honor whatever that doctor says.

Defendants seek dismissal of the Prisoner Complaint on the following grounds:

(1) the DOC and the DOC employees in their official capacities are immune from liability; (2) plaintiff's Complaint fails to state an Eighth Amendment violation; (3) the DOC employees are entitled to qualified immunity; (4) plaintiff's state claims fail as a matter of law; (5) the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims; (6) the DOC employees are immune pursuant to the Colorado Governmental Immunity Act; (7) plaintiff failed to comply with the notice provisions of the Colorado Governmental Immunity Act; and (8) plaintiff failed to submit a certificate of review.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Since the plaintiff is not an attorney, his pleading has been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax

and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 105-06. "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Self v. Crum, 439 F.3d 1227, 1230 (10th Cir.) (quoting Estelle, 429 U.S. at 106), cert. denied, 127 S. Ct. 131 (2006)).

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. . . . The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, *and* [2] that the Defendants' delay in meeting that need caused him substantial harm. Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

The question here is whether the plaintiff's allegations, if true, state a claim

under the Eighth Amendment. Kikumura v. Osagie, 461 F.3d at 1291. This court agrees with the defendants that the Prisoner Complaint fails to state such a claim. Reading plaintiff's Prisoner Complaint liberally, accepting all factual allegations in the pleading as true, and resolving all reasonable inferences in plaintiff's favor, this court finds that the plaintiff merely alleges negligence and disagreement with the course of treatment he has been receiving and challenges the competency of the providers. He was not denied medical treatment. In fact, he states in his pleading that he has seen a specialist, a physical therapist, and a psychologist, has been seen by defendant Walker on many occasions, has been provided with many different prescriptions, and has been provided with a medical devise (a tens unit).

"[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation . . . absent evidence the prison official knew about and disregarded a 'substantial risk of harm' to the [the prisoner's] health or safety." Self v. Crum, 439 F.3d at 1231 (citations and quotations omitted). The subjective component of the deliberate indifference test "is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. . . . The Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated." Id. (citations and quotations omitted). The medical staffs' refusal to provide a particular course of treatment preferred by the plaintiff does not constitute deliberate indifference. See Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999).

Defendants assert that the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims. This court agrees. "Where a district court has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3) expressly authorizes the court to decline to exercise supplemental jurisdiction over the remaining state-law claims." Sauer v. McGraw-Hill Cos., 2001 WL 1250099, *18 (D. Colo. June 12, 2001). "Whether to exercise supplemental jurisdiction under such circumstances lies within the discretion of the court." Id. (citation omitted). The court should exercise such discretion only "in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." Id. Generally, "the balance of factors to be considered will point towards declining to exercise jurisdiction over state-law claims when the federal claims have been eliminated prior to trial." Id. (citation omitted). Furthermore, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." Id. (quotations omitted). In this case, there are no compelling reasons to exercise supplemental jurisdiction. In fact, discovery has not even been conducted yet in this case. Therefore, it is recommended that the plaintiff's state-law claims be dismissed pursuant to 28 U.S.C. § 1367(c).

Based on the findings above, it is unnecessary to address defendants' alternate grounds for dismissal.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss (Docket No. 20) be granted. More specifically, it is recommended that plaintiff's Eighth Amendment claim

be denied with prejudice, and it is further recommended that the court decline to exercise supplemental jurisdiction over any remaining state-law claims contained in claim two. See 28 U.S.C. § 1367(c).

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: December 17, 2007  s/ Michael J. Watanabe
      Denver, Colorado  Michael J. Watanabe
                                    United States Magistrate Judge